AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
BRADY MURPHY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADY MURPHY<br><br>　　　Plaintiff,<br><br><br>v.<br><br><br><br>H & H NORTHWEST, INC. dba THE BACKYARD BAYOU<br><br><br>　　　Defendant. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff BRADY MURPHY complains of Defendant H & H NORTHWEST, INC. dba THE BACKYARD BAYOU, and alleges as follows:

1.　　**INTRODUCTION:**  On June 25, 2024, Plaintiff and his birth mother went out for dinner at The Backyard Bayou restaurant located at 32280 Dyer Street, Union City, California, a favorite spot for both of them. During that visit, Defendant denied Plaintiff Brady Murphy equal access to The Backyard Bayou because he is a disabled individual who uses a service dog assist him with certain tasks related to his disability.  Further, Defendant's employees treated Plaintiff with disrespect due to the presence of his service dog, offering qualitatively different services to him than they give to other non-disabled patrons, including but not limited to requesting that he

1    move tables several times and requiring that they be allowed to take photographs of certain

2    identification documents which included private information about his disability.

3        2.      Upon his arrival at The Backyard Bayou, Defendant's hostess seated Plaintiff, his

4    service dog Regis, and his birth mother without issue.  However, while the two were looking over

5    the menu, Defendant's manager approached Plaintiff and told him that Defendant does not allow

6    dogs inside The Backyard Bayou.  Plaintiff explained that Regis is a service dog and is therefore

7    allowed to accompany him anywhere the public is allowed to go inside the restaurant.

8    Defendant's manager then asked Plaintiff if he would move to a different, less desirable table.

9    Plaintiff declined to move, and Defendant's manager left.

10       3.      Next, someone identifying themselves as the General Manager/Owner (GM) of

11   The Backyard Bayou approached Plaintiff, his birth mother, and Regis.  Defendant's GM

12   informed Plaintiff that Defendant does not allow pets inside The Backyard Bayou. Plaintiff again

13   explained that Regis is a service dog.  Defendant's manager then demanded that Plaintiff provide

14   "proof" that Regis is a service dog.  Plaintiff questioned whether Defendant was legally allowed

15   to ask for "proof" that a dog is a service dog, but Defendant's GM was adamant that Defendant

16   was allowed to require proof that a dog is a service dog.  Ultimately, rather than draw more

17   unwanted attention to himself and his birth mother, Plaintiff produced an ID card identifying

18   Regis as a service dog, and Defendant's GM took a photograph of the ID.  Plaintiff complained

19   about this and asked Defendant's GM to delete the photo because it has personal information

20   regarding his disability on the ID.  Defendant's GM refused, and threatened Plaintiff by stating

21   that Defendant had the right to refuse service to anyone.

22       4.      Defendant's employees begrudgingly took Plaintiff's and his birth mother's order.

23   They were able to eat their food, but Defendant's employees made it very unpleasant. They ate

24   their food as quickly as possible and left.

25       5.      Although Plaintiff and his birth mother were served food at the restaurant,

26   Defendant's noncompliant service dog policy and poor employee training ruined their meal.

27   Additionally, Plaintiff had to essentially force his way into the restaurant, which many disabled

28   service dog users would not do. Further, Plaintiff's experience of being treated very poorly and

1   essentially having to force Defendant's to provide him even minimal service left him emotionally

2   drained and upset.  He does not want to experience the same treatment the next time he visits, so

3   he is deterred from returning to The Backyard Bayou until Defendant adopts an ADA compliant

4   service dog policy.

5           6.        The Defendant's decision to require an ID for service dogs contravenes the

6   Department of Justice's technical assistance and guidance on the subject of "Service Animals."

7   In relevant part, the guidance states:

8       •   A person with a disability cannot be asked to remove his service animal from the

9          premises unless: (1) the dog is out of control and the handler does not take

10          effective action to control it or (2) the dog is not housebroken. When there is a

11          legitimate reason to ask that a service animal be removed, staff must offer the

12          person with the disability the opportunity to obtain goods or services without the

13          animal's presence**.**

14   DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-

15   animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these

16   requirements specifically in the hotel context:

17       **Q17. Does the ADA require that service animals be certified as service**

18       **animals**?

19       A. No. Covered entities may not require documentation, such as proof that the

20       animal has been certified, trained, or licensed as a service animal, as a condition for

21       entry.

22       **There are individuals and organizations that sell service animal certification**

23       **or registration documents online. These documents do not convey any rights**

24       **under the ADA and the Department of Justice does not recognize them as**

25       **proof that the dog is a service animal.**

26   https://www.ada.gov/resources/service-animals-faqs/

27           7.        The Backyard Bayou restaurant has sentimental meaning for Plaintiff because he

28   and his birth mother eat there each time that she visits the Bay Area to see him. Plus, he loves the

1  food. Plaintiff intends to return to the restaurant in the future but cannot do so until the policies of

2  the restaurant are made accessible to disabled individuals who use service dogs, including

3  revision of its service dog policies and necessary employee training and/or re-training. He also

4  wants his personal medical information deleted from the GM's phone.  He has brought this

5  lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him

6  for harassing him and refusing him to equal access to service at the restaurant because he is a

7  disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an

8  injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a

9  qualified service dog at The Backyard Bayou.

10      8.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C.

11  sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law

12  pursuant to 28 U.S.C. § 1367.

13      9.      **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and

14  is proper because the real property which is the subject of this action is in this district and that

15  Plaintiff's causes of action arose in this district.

16      10.      **INTRADISTRICT:**  This case should be assigned to the Oakland intradistrict

17  because the real property which is the subject of this action is in this intradistrict and Plaintiff's

18  causes of action arose in this intradistrict.

19      11.      **PARTIES:**  Plaintiff Brady Murphy is a "qualified" disabled person who uses the

20  assistance of a service dog to alert him of the onset of seizures.  He suffers from epilepsy which

21  causes Plaintiff to have grand mal seizures. Despite mitigation of his seizures with several

22  medications, Plaintiff still experiences one to two breakthrough seizures a month, and in times of

23  stress the frequency of his seizures can increase significantly.  Plaintiff relies on his service dog, a

24  giant schnauzer named "Regis" to assist him with certain tasks related to his disability including

25  alerting him of the onset of a seizure, leading Plaintiff to a safe place to have the seizure or

26  alerting him to lie down on the ground, and positioning himself to cushion Plaintiff if he falls.

27  Regis was professionally trained by several different trainers with significant assistance from

28  Plaintiff. Plaintiff and Regis have been working together for over five years.  Plaintiff and Regis

4

reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

12.     Defendant H & H NORTHWEST, INC. dba THE BACKYARD BAYOU, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 32280 Dyer Street, Union City, California, known as The Backyard Bayou.

13.      The Backyard  Bayou is a place of "public accommodation" and a "business establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14.     **FACTUAL STATEMENT:**  Plaintiff Brady Murphy has been working with his service dog Regis for over five years.  Regis is a six-year-old giant schnauzer who was trained to be a service dog since birth. Regis was both professionally trained by several trainers and individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Regis to serve his specific needs throughout their relationship.  Regis is specifically trained to assist Plaintiff with certain tasks including alerting Plaintiff prior to the onset of a seizure, leading Plaintiff to a safe place or alerting him to lie down prior to a seizure, and cushioning Plaintiff's fall if he collapses from a seizure.

15.     Regis is a working dog; he is not a pet.  Plaintiff and Regis have trained extensively together, and they supplement that training daily.  Plaintiff takes Regis almost everywhere with him in public.  It is important they stay together as much as possible because (a) Regis provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Regis goes.

16.     In late June, Plaintiff's birth mother was visiting the Bay Area to see him.  She visits Plaintiff regularly from her home in Atlanta, and when she is visiting, Plaintiff and his birth mother have a tradition of going out to eat at The Backyard Bayou.  They have been there several times before without issue.

17. On June 25, 2024, Plaintiff and his birth mother went to The Backyard Bayou for dinner around 6:00 pm. As is his usual practice when he goes out in public, Plaintiff took his service dog Regis with him also. When the group arrived, they approached the host's stand to request a table. The host asked Plaintiff how many were in their party to which Plaintiff responded two and a half, gesturing to Regis. The host laughed at Plaintiff's joke and seated the group in a booth. Plaintiff settled in, and Regis was lying on the floor next to him, near his feet. There was plenty of room for servers and patrons to maneuver around Regis.

18. While Plaintiff and his birth mother were perusing the menu a person who identified themselves as a manager of The Backyard Bayou approached them. Defendant's manager informed Plaintiff that dogs were not allowed inside the restaurant. Plaintiff told Defendant's manager that Regis is a service dog and therefore is allowed to accompany him inside the restaurant. Defendant's manager then asked Plaintiff to move to a difference less desirable table. Plaintiff questioned why this was necessary, and Defendant's manager told Plaintiff that Regis was blocking the path of travel.

19. Plaintiff was very tired and sore that day, so he really did not want to move tables. Plaintiff pointed out that there was plenty of room for servers and patrons to get by and that Regis was less in the way than a highchair for a baby would be. Defendant's manager ultimately agreed to let Plaintiff's party remain seated at the booth, and he left.

20. After a few minutes, Plaintiff's party was approached by someone who identified himself as the GM/Owner of the restaurant. Defendant's GM told Plaintiff that "pets" are not allowed in The Backyard Bayou. Plaintiff again explained that Regis is a service dog and allowed to accompany him inside the restaurant. Defendant's GM again said that no pets were allowed inside the restaurant, and Plaintiff again corrected Defendant's GM that Regis is a service dog, not a pet. Defendant's GM then asked Plaintiff if he had an ID card or other paperwork to prove that his dog is a service dog. Plaintiff asked Defendant's GM if he was legally allowed to ask for identification for a service dog. Defendant's GM doubled down by responding yes and insisting that Plaintiff provide such proof. Ultimately, Plaintiff did provide Defendant's GM with a card which identified Regis as a service dog and Plaintiff as his handler because it was clear that

1   Defendant's GM was not going to allow him to stay at the restaurant otherwise.

2       21.      When Plaintiff handed Defendant's GM the service dog ID card, the GM

3   immediately took a photograph of the card on his phone.  This was extremely upsetting to

4   Plaintiff because the ID card had personal information on it such as references to his disability.

5   Plaintiff felt that this was a serious invasion of his privacy.  Plaintiff asked Defendant's GM to

6   delete the photograph to protect his privacy, but Defendant's GM refused.

7       22.      Understandably, Plaintiff was getting upset.  Plaintiff's birth mother reminded him

8   to stay calm as getting upset can trigger a seizure for Plaintiff.  He did his best to calm down, and

9   then he pulled up the ADA on his phone to further discuss the matter with Defendant's GM.

10  Plaintiff showed Defendant's GM the ADA on his phone and attempted to discuss the fact that

11  none of Defendant's employees asked Plaintiff the questions that they were legally allowed to ask

12  per the ADA.  However, Defendant's GM was not interested in discussing the matter further with

13  Plaintiff, and he asserted that as Defendant's GM he had the right to refuse to serve anyone at The

14  Backyard Bayou.

15      23.      It was clear to Plaintiff that he was not going to convince the GM that Defendant's

16  policies violate the ADA, so he and his birth mother ordered and ate their food as quickly as

17  possible so that they could leave the restaurant. Plaintiff left the restaurant feeling humiliated,

18  emotionally exhausted, and depressed.

19      24.      Plaintiff has a desire to return to The Backyard Bayou due to the wonderful food

20  and the sentimental value to his family.  However, Plaintiff is afraid to go back to the restaurant

21  because his previous experiences have made it clear that Defendant does not maintain a service

22  animal policy that complies with state and federal access laws.  It is also clear that Defendant's

23  employees have not received training about how to interact with disabled patrons rely on service

24  dogs for assistance.

25      25.      Plaintiff wishes to return to The Backyard Bayou, but only *after* Defendant has

26  implemented proper service animal policies and training of its staff.  Plaintiff is deterred from

27  returning to the restaurant until these policies and training are in place.

28  //

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq.*)**

26.     Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 25, above, and incorporates them here by reference as if separately repled hereafter.

27.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

28.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

29.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

30.      The Backyard Bayou is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(B).

31.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

32.     Under the "2010 Revised ADA Requirements: Service Animals," as published by

8

the United States Department of Justice, and distributed by the DOJ's Civil Rights Division,

Disability Rights Section, "Generally, title II and title III entities must permit service animals to

accompany people with disabilities in all areas where members of the public are allowed to go."

ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

33.     Defendant has a policy and practice of denying access to patrons of The Backyard

Bayou with service animals. The Defendant's decision to require an ID for service dogs

contravenes the Department of Justice's technical assistance and guidance on the subject of

"Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the

  premises unless: (1) the dog is out of control and the handler does not take

  effective action to control it or (2) the dog is not housebroken. When there is a

  legitimate reason to ask that a service animal be removed, staff must offer the

  person with the disability the opportunity to obtain goods or services without the

  animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these

requirements specifically in the hotel context:

**Q17. Does the ADA require that service animals be certified as service animals**?

A. No. Covered entities may not require documentation, such as proof that the

animal has been certified, trained, or licensed as a service animal, as a condition for

entry.

**There are individuals and organizations that sell service animal certification**

**or registration documents online. These documents do not convey any rights**

**under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

34.     On information and belief, as of the date of Plaintiff's most recent visit to The Backyard Bayou on or about June 25, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

35.     In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

36.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant." 42 U.S.C. § 12181(7)(B).

37.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific

1    prohibitions against discrimination include, but are not limited to the following:

2    § 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an

3    individual or class of individuals, on the basis of a disability or disabilities of such individual or

4    class, directly, or through contractual, licensing, or other arrangements, with the opportunity to

5    participate in or benefit from a good, service, facility, privilege, advantage, or accommodation

6    that is not equal to that afforded to other individuals."

7    § 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or

8    procedures when such modifications are necessary to afford such goods, services, facilities,

9    privileges, advantages, or accommodations to individuals with disabilities...;"

10    § 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no

11    individual with a disability is excluded, denied service, segregated, or otherwise treated

12    differently than other individuals because of the absence of auxiliary aids and services...;"

13          The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights

14    under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

15          38.     On information and belief, as of the dates of Plaintiff's encounters at the premises

16    and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have

17    denied and continue to deny full and equal access to Plaintiff and to other disabled persons who

18    work with service dogs, which violates Plaintiff's right to full and equal access and which

19    discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff

20    the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

21    accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

22          39.     Defendant's actions continue to deny Plaintiff's right to full and equal access by

23    deterring Plaintiff from patronizing The Backyard Bayou and discriminated and continue to

24    discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the

25    full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and

26    accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

27          40.     Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*,

28    Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

41.     Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize The Backyard Bayou, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

42.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 41 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

43.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

44.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging

places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

45.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

46.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

47.     The Backyard Bayou is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

48.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of his legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he seek to return to these facilities.  Plaintiff cannot return to The Backyard Bayou until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination daily since June 25, 2024, all to is statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

49.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

50.     Plaintiff wishes to return to patronize The Backyard Bayou but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize The Backyard Bayou and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

51.     The acts of Defendant has proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

52.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and

costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

53.     **DAMAGES:**  Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize The Backyard Bayou and will continue to cause him damages each day these barriers to access and policy barriers are still present.

54.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant were aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

55.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make

15

1    its facilities accessible to all disabled members of the public, justifying "public interest" attorney

2    fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and

3    other applicable law.

4        56.    Plaintiff suffered damages as above described as a result of Defendant's violations.

5    Damages are ongoing based on his deterrence from returning to The Backyard Bayou.

6        WHEREFORE, Plaintiff prays for relief as stated below.

7                              **THIRD CAUSE OF ACTION:**
     **VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
8    **CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
                              **ACT AS INCORPORATED**
9                              **BY CIVIL CODE SECTION 51(f)**

10       57.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the

11   allegations contained in Paragraphs 1 through 56 of this Complaint and incorporates them herein

12   as if separately re-pleaded.

13       58.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil

14   Code § 51(b), provided that:

15       All persons within the jurisdiction of this state are free and equal, and no matter
         what their sex, race, color, religion, ancestry, national origin, disability, or medical
16       condition are entitled to the full and equal accommodations, advantages, facilities,
         privileges, or services in all business establishments of every kind whatsoever.
17

18       59.    California Civil Code section 52 provides that the discrimination by Defendant

19   against Plaintiff on the basis of his disability constitutes a violation of the general anti-

20   discrimination provisions of sections 51 and 52.

21       60.    Each of Defendant's discriminatory acts or omissions constitutes a separate and

22   distinct violation of California Civil Code section 52, which provides that:

23       Whoever denies, aids or incites a denial, or makes any discrimination or distinction
         contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the
24       actual damages, and any amount that may be determined by a jury, or a court sitting
         without a jury, up to a maximum of three times the amount of actual damage but in
25       no case less than four thousand dollars ($4,000), and any attorney's fees that may
         be determined by the court in addition thereto, suffered by any person denied the
26       rights provided in Section 51, 51.5, or 51.6.

27       61.    Any violation of the Americans with Disabilities Act of 1990 constitutes a

28   violation of California Civil Code section 51(f), thus independently justifying an award of

                                          16

1    damages and injunctive relief under California law, including Civil Code section 52.  Per Civil

2    Code section 51(f), "A violation of the right of any individual under the Americans with

3    Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

4         62.    The actions and omissions of Defendant as alleged here constitute a denial of

5    access to and use of the described public facilities by disabled persons who use service dogs

6    under California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and

7    omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51

8    and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to

9    proof.

10        63.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct,

11   Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

12   statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled

13   persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks

14   recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code

15   sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make

16   its facilities and policies accessible to all disabled members of the public, justifying "public

17   interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure

18   section 1021.5 and other applicable law.

19        64.    Plaintiff suffered damages as above-described as a result of Defendant's

20   violations.

21        WHEREFORE, Plaintiff prays for relief as stated below.

22                                    <u>**PRAYER**</u>

23        Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this

24   Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the

25   unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff

26   is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and

27   opposing legal positions on Defendant's violations of the laws of the United States and the State

28   of California. The need for relief is critical because the rights at issue are paramount under the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1    laws of the United States and the State of California.

2          WHEREFORE, Plaintiff Brady Murphy prays for judgment and the following specific

3    relief against Defendant:

4          1.      An order enjoining Defendant, its agents, officials, employees, and all persons

5    acting in concert with them:

6                 a.   From continuing the unlawful acts, conditions, and practices described in this

7                      Complaint;

8                 b.   To modify its policies and practices to accommodate service dog users in

9                      conformity with federal and state law, and to advise Plaintiff that his service dog

10                     will not be excluded should he desire to enter and use the services of The

11                     Backyard Bayou;

12                c.   That the Court issue preliminary and permanent injunction directing Defendant as

13                     current owner, operator, lessor, and/or lessee and/or its agents of the subject

14                     property and premises to modify the above described property, premises, policies

15                     and related policies and practices to provide full and equal access to all persons,

16                     including persons with disabilities; and issue a preliminary and permanent

17                     injunction under ADA section 12188(a) and state law directing Defendant to

18                     provide facilities usable by Plaintiff and similarly situated persons with

19                     disabilities, and which provide full and equal access, as required by law, and to

20                     maintain such accessible facilities once they are provided and to train Defendant's

21                     employees and agents in how to recognize disabled persons and accommodate

22                     their rights and needs;

23                d.   An order retaining jurisdiction of this case until Defendant has fully complied with

24                     the orders of this Court, and there is a reasonable assurance that Defendant will

25                     continue to comply in the future absent continuing jurisdiction;

26         2.      An award to Plaintiff of statutory, actual, general, treble, and punitive damages in

27    amounts within the jurisdiction of the Court, all according to proof;

28         3.      An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

1    Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise

2    permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

3         4.      An award of prejudgment interest under Civil Code § 3291;

4         5.      Interest on monetary awards as permitted by law; and

5         6.      Grant any other relief that this Court may deem just and proper.

6

7    Date: August 5, 2024                              REIN & CLEFTON

8

9                                                      _____/s/ Aaron M. Clefton_____
                                                       By AARON M. CLEFTON, Esq.
10                                                     Attorneys for Plaintiff
                                                       BRADY MURPHY
11

12                                    **JURY DEMAND**

13        Plaintiff demands a trial by jury for all claims for which a jury is permitted.

14   Date: August 5, 2024                              REIN & CLEFTON

15

16                                                     _____/s/ Aaron M. Clefton_____
                                                       By AARON M. CLEFTON, Esq.
17                                                     Attorneys for Plaintiff
                                                       BRADY MURPHY
18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES